IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**BRUCE FILLPOT,**

       **Plaintiff,**

vs.                                            No. CIV 07-1216 RB/WPL

**INTEL CORPORATION,**
a foreign corporation,

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion for Summary Judgment. Jurisdiction is founded upon 28 U.S.C. § 1331. Having considered the submissions of the parties, relevant law, and being otherwise fully advised, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.    Background.**

In July 2005, Plaintiff Bruce Fillpot submitted his resume to Defendant Intel Corporation, and, shortly thereafter, an Intel employee conducted a telephone interview of him. On September 9, 2005, Plaintiff was interviewed onsite at Intel for the position of Financial Analyst. During his interviews, Mr. Fillpot mentioned that he had been sexually harassed by his former supervisor. On September 16, 2005, Mr. Fillpot submitted an online application to Intel in which he listed the following as his reason for leaving his previous employer: "Lawsuit pending over sexual harassment." On the online application, Mr. Fillpot specifically acknowledged that any offer of employment received from Intel would be contingent upon him passing a background check.

In early October 2005, Intel informed Mr. Fillpot via telephone that the Company would be making him an offer of employment conditioned on his passing a background check. On October

7, 2005, Intel sent Mr. Fillpot a letter with a conditional offer of employment for a Financial Analyst position. The letter explicitly stated that the offer of employment was conditioned on Mr. Fillpot passing a background investigation and that Intel is an "at will" employer. On October 12, 2005, Mr. Fillpot verbally accepted Intel's conditional offer of employment.

The Financial Analyst position for which Mr. Fillpot received a conditional offer of employment is classified by Intel as a "Position of Trust," requiring an expanded background investigation (Doc. 25-8). On October 31, 2005, Mr. Fillpot signed a release authorizing Intel to perform a background investigation. As part of the background investigation, Mr. Fillpot was questioned about his bankruptcy, a lawsuit against his former employer, overdue child support payments, and antecedent business interests.

On November 2, 2005, Mr. Fillpot sent an email to Intel's background investigation supplier, in which he explained the circumstances of his bankruptcy as follows:

> I spoke with Tina Noonan at Intel regarding my background investigation and the delay in my start date. She indicated the reason for the delay is because of the issue with my Chapter 7 bankruptcy filing in 2002. This bankruptcy filing was due to a nasty divorce in which the judge forced us to file. I believe that we could have avoided, and tried franticaly [sic] to avoid filing, the bankruptcy if the judge would have wanted to (Doc. 25-11).

Finding Mr. Fillpot's explanation about the circumstances leading to his bankruptcy filing odd, an Intel employee reviewed the docket from Mr. Fillpot's divorce case and found that the Judge only had ordered Terri L. Fillpot, Mr. Fillpot's ex-wife, "to file personal individual bankruptcy, discharging all community obligations" (Docs. 25-12, 25-13). The docket further revealed that Mr. Fillpot had filed a motion requesting the Court to enforce its order and compel Ms. Fillpot to file bankruptcy (Docs. 25-12, 25-14).

An Intel employee also reviewed the docket from Mr. Fillpot's sexual harassment lawsuit against his former employer, which included the following information: (1) Mr. Fillpot's former

employer had alleged that he had not been fired, but had abruptly walked off the job, demanding that the company make him a buy-out offer, requested his personnel file, turned in his keys, removed his personal items from his desk, and left the premises, ignoring then-pending client appointments, and (2) Mr. Fillpot's former employer was pursuing a claim against him for conversion of company assets because he allegedly had failed to remit $4,350.99 in expenses that had been charged to his former employer, but for which Mr. Fillpot had been reimbursed by a trade association (Docs. 25-12, 25-15, 25-16).

On November 21, 2005, after the background investigation had been completed, Patrick Duffy, a Human Resources Attorney for Intel, recommended to the hiring manager, David Martinez, that the conditional offer of employment to Mr. Fillpot be withdrawn. Mr. Duffy's recommendation listed three reasons for withdrawing the conditional offer of employment: (1) apparent discrepancies between Mr. Fillpot's explanation about the circumstances leading to his bankruptcy and the divorce court docket; (2) the appearance that Mr. Fillpot had walked off the job at his previous employment and failed to engage in constructive problem solving, and (3) the claim by Mr. Fillpot's former employer against him for conversion of company assets (Doc. 25-17). On November 28, 2005, Intel sent a letter to Mr. Fillpot informing him that the Company was withdrawing its conditional offer of employment.

On December 2, 2005, Mr. Fillpot called Intel Investigative Manager, Ben Wyne, to inquire into the reasons that Intel withdrew its conditional offer of employment. Mr. Fillpot surreptitiously tape-recorded that telephone conversation. Mr. Wyne explained to Mr. Fillpot that the conditional offer of employment had been withdrawn because Intel was concerned about his judgment–it appeared that he had walked off the job without exhausting constructive problem solving avenues, and his former employer had a claim against him for conversion of company assets (Doc. 25-20).

Mr. Fillpot never reported to work at Intel; he never submitted any employment paperwork, and he never received any compensation from Intel (Docs. 25-3, 28-2).

On December 3, 2007, Mr. Fillpot filed this lawsuit, claiming (1) he was retaliated against by Intel, in violation of Title VII of the Civil Rights Act of 1964, for filing a sexual harassment claim against his former employer, and (2) he was discriminated against by Intel, in violation of 11 U.S.C. § 525(b), for having filed for bankruptcy. On August 15, 2008, Intel filed its Motion for Summary Judgment.

**II.     Summary Judgment Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotations omitted). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotations omitted). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for

4

the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Munoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

**III.   Discussion.**

**A.  Title VII Claim.**

Plaintiff alleges that Intel retaliated against him, in violation of Title VII, for filing a sexual harassment lawsuit against his former employer. Mr. Fillpot has not offered any direct evidence of retaliation; therefore, his claim is subject to the Supreme Court's burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing: (1) he engaged in a protected opposition to discrimination; (2) he suffered an adverse employment action subsequent to the protected activity, and (3) a causal connection between the

protected activity and the adverse action. *Medina v. Income Support Div.*, 413 F.3d 1131, 1135-36 (10th Cir. 2005).  If the plaintiff establishes his prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003).  If the defendant meets its burden, summary judgment against the plaintiff is warranted unless he shows that there is a genuine issue of fact as to whether the defendant's reasons are merely pretextual. *Id.*  The plaintiff meets his burden here if he demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's proffered reasons for the adverse employment action that "a reasonable fact finder could rationally find them unworthy of credence." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (internal quotations omitted).

As Defendant concedes, Mr. Fillpot's sexual harassment suit against his former employer constitutes a protected activity and denying employment is an adverse employment action (Doc. 25). Plaintiff offers the following as evidence of a causal connection between his sexual harassment claim against his former employer and Intel's withdrawal of its conditional offer of employment: (1) the temporal proximity of the background investigation into his sexual harassment lawsuit against his former employer and the withdrawal of the conditional offer of employment; (2) the fact that he was questioned about the sexual harassment lawsuit during his background investigation; (3) the fact that Intel reviewed the docket of his lawsuit against his former employer, and (4) the fact that e-mails from Intel's Human Resources Department specifically instruct Intel employees to tell Mr. Fillpot that his lawsuit against his former employer was not the reason Intel withdrew its conditional offer of employment.

The evidence proffered by Mr. Fillpot is insufficient to establish a prima facie case of

retaliation. "A close temporal proximity will almost always occur in failure-to-hire cases because employers naturally make hiring decisions soon after receiving applications and conducting interviews. Thus, temporal proximity alone will usually be insufficient to establish a causal connection between the protected opposition to discrimination and not being hired." *Kelley v. Goodyear Tire and Rubber Co.*, 220 F.3d 1174, 1179 (10th Cir. 2000). In this case, however, Mr. Fillpot cannot even establish temporal proximity. Mr. Fillpot initially disclosed to Intel his claim against his former employer for sexual harassment at his job interview on September 9, 2005, and on September 16, 2005, he submitted an online application to Intel in which he listed "[l]awsuit pending over sexual harassment" as his reason for leaving his previous employer. Significantly, Intel gave Mr. Fillpot a conditional offer of employment on October 7, 2005 despite the fact that he had disclosed his lawsuit against his former employer. Intel did not withdraw its conditional offer of employment until November 28, 2005, approximately two months and three weeks after Mr. Fillpot had disclosed his claim against his former employer for sexual harassment. The Tenth Circuit Court of Appeals has held that a time gap of between two months and one week and just under three months was probably too long to establish the required nexus for a finding of causation. *See Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004) (noting that the relevant time period for establishing causation based on temporal proximity is the period between the employer's awareness of a protected activity and the adverse employment action). Plaintiff's temporal proximity argument, therefore, is too thin to support a prima facie case of retaliation.

Any inference of causation arising out of the fact that Intel looked into Mr. Fillpot's lawsuit against his former employer as part of its background investigation is overwhelmed by the fact that Intel gave Mr. Fillpot a conditional offer of employment *after* he had disclosed the lawsuit against his former employer. *See Weaver v. Chavez*, 458 F.3d 1096, 1098-99 (10th Cir. 2006) (noting that

intervening events can undermine any inference of causation or retaliatory motive). Indeed, it would make little sense for Intel to give Mr. Fillpot a conditional offer of employment in anticipation of retaliating against him for filing a sexual harassment lawsuit against his former employer which it already knew about. Finally, the e-mails from an attorney in Intel's Human Resources Department instructing Intel employees to tell Mr. Fillpot that his lawsuit against his former employer was not the reason Intel withdrew its conditional offer of employment cannot reasonably be construed as evidence of retaliation.

Mr. Fillpot has not established a prima facie case that Intel retaliated against him, in violation of Title VII, for his pursuit of a sexual harassment lawsuit against his former employer. Plaintiff's retaliation claim, therefore, must be dismissed with prejudice.[1]

### B.  11 U.S.C. § 525(b) Claim.

Plaintiff alleges that Intel violated the anti-discrimination provisions of the Bankruptcy Code by withdrawing its conditional offer of employment to him. The anti-discrimination provisions of the Bankruptcy Code prohibit certain forms of employment discrimination against persons who have

---

[1] Even if Mr. Fillpot had established a prima facie case of retaliation, his Title VII claim would still fail because Intel has articulated three legitimate, nondiscriminatory reasons for withdrawing their conditional offer of employment: (1) apparent discrepancies between Mr. Fillpot's explanation about the circumstances leading to his bankruptcy and the divorce court docket; (2) the appearance that Mr. Fillpot had walked off the job at his previous employment and failed to engage in constructive problem solving, and (3) the claim by Mr. Fillpot's former employer against him for conversion of company assets. *See Wells*, 325 F.3d at 1212. Plaintiff has not offered any evidence to suggest these reasons are not genuine, and it is irrelevant whether or not these allegations are true. *See Sorbo v. United Parcel Service*, 432 F.3d 1169, 1178 (10th Cir. 2005) (noting "the relevant inquiry in such cases concerns the belief of the employer that the employee engaged in misconduct, not whether the actual facts, as shown by evidence extrinsic to the employer's assessment, may have been otherwise"). Indeed, Plaintiff has offered no evidence that could demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Intel's proffered reasons for withdrawing its conditional offer of employment that "a reasonable fact finder could rationally find them unworthy of credence." *Anderson*, 181 F.3d at 1179.

filed for bankruptcy. 11 U.S.C. § 525 provides, in pertinent part, as follows:

> (a) *[A] governmental unit may not ... deny employment to, terminate the employment of, or discriminate with respect to employment against, a person* that is or has been a debtor under this title or a bankrupt or a bankrupt debtor under the Bankruptcy Act, ... solely because such bankrupt debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
>
> (b) *No private employer may terminate the employment of, or discriminate with respect to employment against, an individual* who is or has been a debtor under this title, [or] a debtor or bankrupt under the Bankruptcy Act, ... solely because such debtor or bankrupt–
>     (1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act.
>     (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
>     (3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act. 11 U.S.C. § 525(a)-(b) (emphasis added).

11 U.S.C. § 525(a) clearly only applies to governmental entities, and Plaintiff does not suggest that Intel is a governmental entity. Plaintiff, therefore, must rely on 11 U.S.C. § 525(b), which applies to private employers, such as Intel. Plaintiff essentially argues that the language prohibiting discrimination "with respect to employment," contained in 11 U.S.C. § 525(b), is broad enough to cover all employment decisions–including failure to hire a prospective employee–and thus bars Defendant's decision not to hire Mr. Fillpot allegedly as a result of his bankruptcy filing.

The issue whether 11 U.S.C. § 525(b) prohibits discrimination in hiring decisions by private employers has not been decided by the Tenth Circuit. This Court, therefore, will first turn to the statute for guidance. When interpreting statutes, the Supreme Court has instructed that this Court "must presume that the legislature says in a statute what it means and means in a statute what it says there." *Dodd v. United States*, 545 U.S. 353, 357 (2005) (internal quotations omitted). "Where Congress includes particular language in one section of a statute but omits it in another section of

9

the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. U.S.*, 464 U.S. 16, 23 (1983) (internal quotations omitted).

In 11 U.S.C. § 525(a), Congress expressly prohibited governmental entities from denying employment solely because a person had filed for bankruptcy. 11 U.S.C. § 525(a) (noting the explicit language "a governmental unit may not ... deny employment"). The specific reference to denying employment contained in 11 U.S.C. § 525(a) is conspicuously absent from 11 U.S.C. § 525(b). The Court, therefore, must presume that if Congress saw fit to specifically prohibit governmental employers from discriminating against debtors when making hiring decisions, but failed to place the same restriction on private employers, it did so intentionally. *See Russello*, 464 U.S. at 23.

Another principle of statutory construction also supports a finding that Congress declined to extend the bar against discriminatory hiring decisions to private employers. As noted above, Plaintiff essentially contends that 11 U.S.C. § 525(b) bars discrimination in hiring by private employers because it contains the broad language barring discrimination "with respect to employment." If that contention is true, however, then the phrase "with respect to employment" would also logically include firing existing employees. However, 11 U.S.C. § 525(b) already provides that "[n]o private employer may terminate the employment" of a debtor solely because of the Debtor's bankruptcy filing. If the Court were to read the phrase "with respect to employment" so broadly that it encompassed both hiring and firing decisions, it would render the express anti-termination provision already found in 11 U.S.C. § 525(b) redundant and violate "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative."

*Colautti v. Franklin*, 439 U.S. 379, 392 (1979).[2]

11 U.S.C. § 525(b) does not include a cause of action against private employers for denying employment because the prospective employee had filed for bankruptcy. Plaintiff's allegation that Intel discriminated against him for filing bankruptcy by withdrawing its conditional offer of employment, therefore, fails to state a claim upon which relief can be granted.

**IV.   Conclusion.**

Plaintiff has not established a prima facie case that Intel retaliated against him, in violation of Title VII, for his pursuit of a sexual harassment lawsuit against his former employer, and he cannot state a claim upon which relief can be granted, under 11 U.S.C. § 525(b), against Intel for denying him employment because he had previously filed for bankruptcy.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

**A JUDGMENT CONSISTENT WITH THIS MEMORANDUM OPINION AND ORDER SHALL ISSUE FORTHWITH.**

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE

---

[2] As a matter of law, Mr. Fillpot was never employed by Intel despite the fact that he may have considered himself an employee. Intel's offer of employment was expressly conditioned upon Mr. Fillpot passing a background investigation. Because Mr. Fillpot did not pass the background investigation, an employment contract between himself and Intel was never formed. *See Elephant Butte Resort Marina, Inc. v. Wooldridge*, 102 N.M. 286, 289, 694 P.2d 1351, 1354 (N.M. 1985) (noting that "[i]n a contract, a condition precedent is a condition or right which must be met before the contract is formed"). Furthermore, Mr. Fillpot never reported to work at Intel; he never submitted any employment paperwork, and he never received any compensation from Intel (Docs. 25-3, 28-2). As a matter of law, Plaintiff, therefore, cannot make a prima facie claim that his employment was terminated by Intel because he had filed for bankruptcy.